UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN FRANCIS<br><br>Petitioner,<br><br>v.<br><br>NELSON ALVES,<br><br>Respondent. | Civil Action No. 22-30074-MGM |

MEMORANDUM & ORDER REGARDING
RESPONDENT'S MOTION TO DISMISS
(Dkt. No. 9)

September 30, 2025

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Petitioner, Kevin Francis, was convicted of murder in the first degree and sentenced to life imprisonment in 1982. Following direct appeal, his conviction was upheld in 1984.[1] The same attorney, Stephen Hrones, represented Petitioner during the trial and appeal. Hrones was appointed, and compensated, by the court for his work on the appeal, but he had not qualified for court appointment as to the trial and received no pay for it. Instead, following a sidebar conducted without Petitioner present, the judge presiding at Petitioner's arraignment agreed to allow Hrones to represent Petitioner privately on a pro bono basis. The judge did not advise Petitioner that he had a right to appointed

---

[1] As Petitioner was only 19 years old when he was convicted and sentenced to life imprisonment, the court finds it pertinent to note that during the time the petition has been pending with this court, the SJC announced that individuals convicted of committing first degree murder as emerging adults between the ages of 18 and 21 and sentenced prior to August 2, 2012, "must be granted a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before the Massachusetts parole board." *Commonwealth v. Mattis*, 224 N.E.3d 410, 429-30 (Mass. 2024).

counsel and did not have to accept representation from Hrones. However, the judge did describe the terms of the representation for the record and the summary was included in the arraignment transcript.

During the decades after his conviction, Petitioner took various steps to challenge his conviction. He obtained his transcripts, including the transcript of his arraignment, shortly after his conviction and again in 1989. Proceeding pro se, he filed a motion for new trial in 1991. While that motion was pending, his case was screened by the Massachusetts public defender agency, the Committee for Public Counsel Services ("CPCS"), to determine whether counsel should be appointed to pursue a collateral challenge to Petitioner's conviction. The screening attorney recommended against appointment of counsel and Petitioner's motion for new trial was denied on September 23, 1993. Six years later, Petitioner wrote to CPCS and requested assistance challenging his conviction. His case was screened and the screening attorney again recommended against appointment of counsel. Between 2000 and 2002, individuals close to Petitioner retained private investigators to work on his case. In 2010, at the suggestion of a friend and fellow prisoner, Petitioner contacted a specific attorney at CPCS and asked for help with his case. The attorney was assigned to screen the case in 2012 and was assigned to the case for all purposes in December 2014.

Nine months later, this most recently assigned counsel filed a second motion for new trial in Massachusetts state court. The motion included several claims, one of which asserted, for the first time, that the process by which Hrones became his attorney violated his Sixth Amendment right to counsel. That claim was eventually taken up by the Massachusetts Supreme Judicial Court ("SJC"). On June 24, 2020, the SJC ruled Petitioner's "right to choice of private counsel and right to be present during a critical stage of the proceeding under both the Federal and State Constitutions were violated," and the violations were structural errors. *Commonwealth v. Francis* 147 N.E.3d 491, 497 (Mass. 2020). The SJC recognized that structural errors "require[e] automatic reversal absent waiver," then concluded Petitioner had waived the claims by not bringing them until more than thirty years after his

conviction, despite having access to the transcript of his arraignment prior to filing his first motion for new trial in 1991. *Id.* In the decision, the SJC specifically noted that finding waiver did not create a "substantial risk of a miscarriage of justice" because "the only error identified" by Petitioner concerned the process by which Hrones became his attorney. *Id.* at 497-98. Petitioner filed an unsuccessful motion for reconsideration and then a petition for certiorari. The Supreme Court denied the petition on June 14, 2021, and Petitioner filed his petition with this court on June 9, 2022. Petitioner presents five separate grounds for relief, but the center of each is the problematic process by which Hrones became Petitioner's attorney; there are no separate claims that Hrones provided ineffective assistance or that there is previously overlooked evidence of actual innocence.

Defendants filed a motion to dismiss the entire petition as untimely, or alternatively, to dismiss grounds three through five because they were not previously presented to the state court. Petitioner has vigorously opposed Defendant's motion. After review, the court concludes Defendant's petition is untimely and grants the Defendant's motion for the reasons that follow.

II.    TIMELINESS UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "Congress enacted [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] on April 24, 1996, in part to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction." *Neverson v. Bissonnette*, 261 F.3d 120, 124 (1st Cir. 2001). One of the ways AEDPA restricts the authority of federal courts to consider habeas petitions filed by state prisoners is by imposing a one-year limitations period. 28 U.S.C. § 2244(d)(1).

The limitations period generally begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "[P]risoners whose state convictions became final prior to AEDPA" were granted a one-year grace period that ran from April 24, 1996, the effective date of AEDPA, through April 24, 1997, during which they could file a petition. *Lattimore v. Dubois*, 311 F.3d 46, 52 (1st Cir. 2002). Congress also created three exceptions that postpone the commencement of the limitations period. First, "if the applicant was prevented from filing by . . . State action," that created an "impediment to filing . . . in violation of the Constitution or laws of the United States," the one-year limitations period begins to run at the time the impediment is removed. 28 U.S.C. § 2244(d)(1)(B). Second, when the Supreme Court newly recognizes a constitutional right and makes it "retroactively applicable to cases on collateral review," petitioners have a year to seek relief based on the newly-recognized constitutional right. 28 U.S.C. § 2244(d)(1)(C). Finally, a petitioner who later uncovers a factual basis for a federal habeas claim has one year from the date the fact "could have been discovered through the exercise of due diligence" to bring the claim. 28 U.S.C. § 2244(1)(D). The limitations period is tolled while an application for post-conviction relief is pending before a state court. *Holland v. Fla.*, 560 U.S. 631, 635 (2010). Additionally, the Supreme Court has recognized that the limitations period is not jurisdictional, and a court may apply equitable tolling when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## III.    DISCUSSION

Petitioner filed his petition in this court on June 9, 2022, nearly forty years after his conviction was affirmed on direct appeal and twenty-five years after the AEDPA grace period expired in April

1997. Defendants argue his petition is clearly untimely. In response, Petitioner contends his petition is timely under one of several alternative theories. First, Petitioner asserts that the one-year filing period was statutorily tolled from the time his direct appeal concluded in 1984 until his current counsel was appointed on December 27, 2014 because Massachusetts had impeded his ability to pursue his current Sixth Amendment claim by denying him access to conflict-free counsel prior to that time. Second, Petitioner asserts the proceeding to resolve his 2015 motion for a new trial "was a substitute for the direct appellate review under state law and had the effect of reopening his direct appeal and made his conviction 'no longer final for [AEDPA] purposes.'" (Pet. Opp. Mot. Dismiss, Dkt. No. 19 at 13 (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009)). Under this theory, a new one-year period for seeking federal habeas review commenced when the SJC's 2020 decision became final. Finally, Petitioner asks the court to apply equitable tolling to find his petition timely.  The court addresses each of these alternative arguments in turn.

A. Conflict-Free Counsel and State-Created Impediment

The key aspects of the problematic process through which Hrones became Petitioner's trial counsel were detailed in the transcript of Petitioner's arraignment. Petitioner had a copy of that transcript before his direct appeal was complete and he obtained another copy in 1989. Despite having access to the relevant facts, Petitioner did not raise his current Sixth Amendment argument until he filed his second motion for new trial in 2015. He argues Massachusetts impeded him from raising this issue by failing to appoint him counsel, other than Hrones, until 2014. This argument is flawed for two reasons. First, the plain language of the statute specifies that "the applicant was prevented from filing" their habeas petition by the state-created impediment, and the court understands this to mean the state action directly interfered with the petitioner's ability timely file a habeas petition. *See Critchley v. Thaler*, 586 F.3d 318, 321 (5th Cir. 2009) (finding "[u]nder the unique circumstances of th[e] case," that a state impediment was created when a county clerk repeatedly failed to file state prisoner's

5

petitions for state post-conviction relief); *Earl v. Fabian*, 556 F.3d 717, 728 (8th Cir. 2009) (recognizing that a state's delay in notifying a petitioner that his judgment of conviction had become final could constitute a state-created impediment and remanding to develop a factual record); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (finding the unavailability of AEDPA in a prison law library prior to June 1998 might constitute a state-created impediment and remanding to develop a factual record). Second, while a pro se litigant assisted by counsel is more likely to identify legal grounds for challenging their conviction, there is no constitutional right to counsel for persons convicted of crimes and seeking collateral review. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Ellis v. United States*, 313 F.3d 636, 652 (1st Cir. 2002) (noting that a claim of ineffective assistance does not entitle a criminal defendant to appointed counsel to pursue collateral review). As Petitioner was not entitled to post-conviction counsel and lack of counsel did not directly impede his ability to file his federal habeas petition, the court is not persuaded that the lack of counsel constituted a state-created impediment for purposes of applying statutory tolling under AEDPA.

B. Reopening of Direct Appeal

In *Jimenez v. Quaterman*, the Supreme Court ruled that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review," the one-year period for filing a federal habeas petition begins to run at the conclusion of the newly filed direct appeal. 555 U.S. at 121. Relying on *Jimenez*, Petitioner asserts the one-year AEDPA filing period did not commence until his 2015 motion for new trial was fully adjudicated. In *Jimenez*, counsel for the petitioner filed a direct appeal in which he stated "that he was unable to identify any nonfrivolous ground on which to base an appeal," and failed to ensure that petitioner received timely notice of his right to file a pro se brief. *Id.* at 115. When the petitioner learned what had happened, he sought relief, and the state appellate court expressly ruled that he was entitled to file an out-of-time appeal of his conviction. *Id.* The facts in this case differ in important respects. First, Hrones, serving as

appointed counsel, filed a timely direct appeal of Petitioner's conviction after the 1982 conviction. The SJC ultimately affirmed the conviction, and Petitioner does not claim that Hrones was ineffective either when serving as trial counsel or as appellate counsel. Second, the SJC's 2020 ruling repeatedly referred to Petitioner's direct appeal and clearly distinguished the then-current posture of the case from the earlier direct appeal. The one-year filing period under AEDPA commences when a state court conviction becomes "final" at the conclusion of the direct appeal. *Jimenez,* 555 U.S. at 119. Later state proceedings may reset the clock, but only if the state court has clearly reopened direct review. *Id.* at 120. As the SJC has not done so, this court finds Petitioner's conviction became final in 1984.

Petitioner was permitted to file a federal habeas petition during the one-year AEDPA grace period, but he did not do so. He also did not have a collateral challenge pending in state court at that time, which would have tolled the one-year period. Petitioner did file a motion to correct certain docket entries in November 1996, but even if the limitations period was tolled while that motion was pending, the one-year period would have expired well before Plaintiff's next state court filing in September 2015.

C. Equitable Tolling

Finally, Petitioner asks the court to apply equitable tolling to find his petition timely. "[E]quitable tolling requires a habeas petitioner to demonstrate as necessary conditions for relief that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented timely filing . . . ." *Holmes v. Spencer*, 822 F.3d 609, 611 (1st Cir. 2016). The court finds equitable tolling is unwarranted in this case.

Seven years passed between the conclusion of Petitioner's direct appeal and his first effort to obtain collateral review of his conviction. Between 1993, when his first motion for new trial was denied, and 1999, when he next contacted CPCS to request assistance of counsel, Petitioner asserts

that he was waiting to hear about a pending appeal and petition for SJC review, but he does not allege trying to obtain information about the status of those efforts. Petitioner also made no effort to pursue his rights between 2002 and 2010, when he again contacted CPCS to request assistance of counsel.

Petitioner contends there were periods during which he did not actively seek collateral relief because he believed erroneous advice that he lacked any viable legal bases for challenging his conviction. Ignorance of specific legal claims does not excuse a lack of diligence. Additionally, even if the court were to find Petitioner's efforts were sufficiently diligent, he has not identified any extraordinary circumstances for his delay in raising his Sixth Amendment claim. Lack of legal training, limited access to legal resources, and no appointed counsel are the type of "'usual problems inherent in being incarcerated [that] do not justify equitable tolling.'" *Holmes v. Spencer*, 685 F.3d 51, 63 (1st Cir. 2012) (quoting *Baldayaque v. United States,* 338 F.3d 145, 152 (2d Cir. 2003)).

## V.    CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (Dkt. No. 9) is granted. The court finds Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is time-barred and the petition is dismissed. This case may now be closed.

It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge